```
Approved: /s/ Katherine Reilly, by SDA with permission
          _____
          KATHERINE REILLY
          Assistant United States Attorney

Before:   THE HONORABLE STEWART D. AARON
          United States Magistrate Judge
          Southern District of New York
```

**21 MAG 3776**

- - - - - - - - - - - - - - - - X
                                 :
UNITED STATES OF AMERICA         :     <u>SEALED COMPLAINT</u>
                                 :     Violation of
          - v. -                 :     18 U.S.C §§ 656, 1343,
                                 :     1344, 1349, 1956, and 2.
                                 :
GANGADAI RAMPERSAUD AZIM,        :
    a/k/a "Julie Azim,"          :     COUNTY OF OFFENSE:
                                 :     NEW YORK
              Defendant.         :
                                 :
- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

   ANTHONY MARTINEZ, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

<u>COUNT ONE</u>
(Conspiracy to Commit Bank Fraud and Wire Fraud)

   1.   From in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to commit bank fraud, in violation of Title 18, United States Code, Section 1344, and wire fraud, in violation of Title 18, United States Code, Section 1343.

   2.   It was part and an object of the conspiracy that GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute a scheme or artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a

financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, AZIM agreed with others to misappropriate funds from her employer, a financial institution insured by the FDIC ("Bank-1"), including by creating fraudulent loans on the books of Bank-1, entering false information regarding existing loans, and executing fraudulent wire transfers, in violation of Title 18, United States Code, Section 1344.

3. It was a further part and object of the conspiracy that GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, AZIM and her co-conspirators used interstate wires, including email correspondence and electronic wire transfers, in furtherance of a scheme to defraud Bank-1 of funds by creating fraudulent loans on the books of Bank-1, entering false information regarding existing loans, and executing fraudulent wire transfers, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Bank Fraud)

4. From in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, willfully and knowingly, executed and attempted to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, AZIM misappropriated funds from Bank-1, including by creating fraudulent loans on the books of Bank-1, entering false

information regarding existing loans, and executing fraudulent wire transfers.

(Title 18, United States Code, Sections 1344 and 2.)

### COUNT THREE
(Wire Fraud)

5. From in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, AZIM carried out a scheme to defraud Bank-1 of funds by creating fraudulent loans on the books of Bank-1, entering false information regarding existing loans, and executing fraudulent wire transfers, including through the use of interstate wires through the Southern District of New York including e-mails and electronic funds transfers.

(Title 18, United States Code, Section 1343.)

### COUNT FOUR
(Bank Theft, Embezzlement, or Misapplication)

6. From in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, being an officer, director, agent, and employee of, and connected in a capacity with a federally insured financial institution, with the intent to injure and defraud that financial institution embezzled, and willfully misapplied moneys, funds, and credits of said financial institution, to wit, AZIM misappropriated funds from Bank-1, executing fraudulent wire transfers to direct Bank-1 funds to associates, at least in part for her own benefit.

(Title 18, United States Code, Sections 656 and 2.)

### COUNT FIVE
(Conspiracy to Commit Money Laundering)

7. From in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and

elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956.

8. It was a part and an object of the conspiracy that GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, to wit, AZIM agreed with others to misappropriate funds belonging to Bank-1 by executing wire transfers from Bank-1 to third party accounts, after which the recipients of those wire transfers wired portions of the illegally obtained funds to AZIM, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

9. It was a further part and object of the conspiracy that GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, and others known and unknown, transported, transmitted, and transferred a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds represented the proceeds of some form of unlawful activity, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, to wit, AZIM agreed with others to misappropriate funds belonging to Bank-1 by executing wire transfers from Bank-1 to third party accounts, including accounts in Canada, after which the recipients of those wire transfers wired portions of the

illegally obtained funds to AZIM, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT SIX
(Money Laundering)

10. From in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, knowingly conducted a financial transaction involving property representing the proceeds of specified unlawful activity, to wit, the proceeds of bank fraud in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1956(a)(3)(B) and 2.)

## COUNT SEVEN
(Money Laundering)

11. From in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, transported, transmitted, and transferred a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, to wit, AZIM misappropriated funds belonging to Bank-1 by executing wire transfers from Bank-1 to third party accounts, including accounts in Canada, after which the recipients of those wire transfers wired portions of the illegally obtained funds to AZIM, in violation of Title 18, United States Code, Section 1956 (a)(2)(B)(i).

(Title 18, United States Code, Section 1956(a)(2)(B)(i) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

12. I am a Special Agent with the FBI. I am currently assigned to a squad responsible for investigating wire fraud, bank fraud, securities fraud, money laundering, and other white-collar offenses. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my examination of reports and records, interviews in which I have participated, and conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

13. As set forth in further detail below, in or about August 2008, up to and including in or about January 2021, in the Southern District of New York and elsewhere, GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim,", the defendant, misappropriated approximately $1.7 million from her employer, Bank-1, executing a series of wire transfers of Bank-1 funds to a co-conspirator ("CC-1") and to companies associated with another co-conspirator ("CC-2"), among others. Those co-conspirators then sent portions of the misappropriated funds to AZIM. In furtherance of this scheme, AZIM repeatedly made false entries in Bank-1's systems, misappropriating funds paid to Bank-1 by its clients to satisfy outstanding loan obligations and then extending the maturity dates of those loan obligations, making it appear as though the loan obligations had not yet been paid. When even the fraudulently extended maturity dates came due, AZIM originated new, fraudulent loans. AZIM utilized the proceeds of those fraudulent loans to satisfy the loans for which she had previously stolen the client payments. In doing so, AZIM abused her position at Bank-1 and substantially enriched herself at the expense of her employer.

14. In the course of this investigation, I have reviewed publicly available documents, as well as documents produced by Bank-1 in response to grand jury subpoenas. As a result, I am aware of the following, in substance and in part:

    a. GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, has been employed by Bank-1 since in or about 1988. AZIM works in the New York, New York headquarters of Bank-1, in Bank-1's Trade Services Division.

        b. Bank-1's Trade Services Division provides products and services to businesses operating in global markets, including, but not limited to, the provision of letters of credit and offering of borrowing base lending to Bank-1's clients. More specifically, Bank-1's Trade Services Division is responsible for the issuance and receipt of letters of credit, which are designed to provide assurance that a party to an international transaction will be in a position to make payment upon delivery of goods or services. In many instances, Bank-1's Trade Services Division is responsible for the issuance and receipt of "discounted documents," which are letters of credit on which payment has been accelerated and, thus, the ultimate amount due is discounted by the amount of the interest that would have accrued had it run to maturity.

        c. As a result of her role in the Trade Services Division, AZIM had access to Bank 1's internal systems such that she could, among other things, enter and/or verify wire transfers. Bank-1 requires that for all wire transfers under $10,000, one user enters the transaction and another user verifies the transaction; additional verifiers are required for wire transfers over $10,000. AZIM also had access to Bank-1's internal cash management systems, including those used to open, manage, and direct the proceeds of letters of credit and discounted documents.

        d. In or about January 2021, AZIM took a leave from her position at Bank-1 as a result of illness. On or about January 21, 2021, Bank-1 debited the account of a client of Bank-1 ("Client-1") in the amount of $80,200 in order to pay off an outstanding loan obligation Client-1 had coming due. Client-1 then alerted Bank-1 that the debit was improper, as Client-1 had, in fact, paid off that obligation in or about 2019. Upon further investigation, Bank-1 discovered that while $80,200 had been withdrawn from Client-1's account in or about 2019, AZIM had misappropriated those funds, using them for purposes other than satisfying Client-1's letter of credit obligation.

        e. As a result of identifying this discrepancy, Bank-1 reviewed all outstanding letters of credit and discounted document obligations on its books as of in or about January 2021. Bank-1 officials discovered approximately 14 loan obligations (the "Fraudulent Loan Obligations"), worth more than approximately $1 million, for which no underlying documents existed. System records reflect that AZIM, using her Bank-1 username and password, entered each of the Fraudulent Loan Obligations into Bank-1's systems between on or about December

7

24, 2020 and on or about January 12, 2021.  The Fraudulent Loan Obligations were subsequently verified, without any significant further review, by other employees of Bank-1.  Each of these loan obligations appears to have been opened by AZIM so that the proceeds could be used, in significant part, to pay off outstanding loan obligations coming to maturity; those loan obligations had, in fact, already been satisfied by clients, but AZIM had misappropriated the payments.

       f.   In addition, Bank-1 officials discovered approximately five outstanding loan obligations, worth more than approximately $706,000, for which AZIM appears to have extended the maturity dates, despite the relevant clients having paid off the loan obligation.  In sum, it appears that AZIM extended the maturity dates for existing loan obligations in an effort to make it appear that those loan obligations had not been paid off, when, in fact, AZIM misappropriated the loan proceeds; in an effort to cover up that misconduct, AZIM then opened new loan obligations, utilizing the proceeds to pay off existing loan obligations.

    15.   In the course of this investigation, I have reviewed documents produced by Bank-1 and other entities in response to grand jury subpoenas.  As a result, I am aware that Bank-1 has identified approximately $1.7 million in unauthorized wire transfers sent or verified by GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim,"  the defendant, a substantial portion of which is ultimately transferred from the third party recipients back to AZIM's personal bank account, as set forth in grater detail below.  I am further aware of the following, in substance and in part:

       a.   In an effort to identify what AZIM did with the funds misappropriated as a result of the conduct described above, Bank-1 officials identified more than approximately 200 wire transfers of Bank-1's funds, sent without any proper purpose,  between in or about August 2008 and in or about October 2020, which AZIM either entered or verified in Bank-1's systems.  In total, these unauthorized wire transfers led to the misappropriation of more than approximately $1.7 million out of Bank-1, roughly the same amount of the total loan obligations extended or created as a result of AZIM's misconduct described above. Each of the approximately 200 unauthorized wire transfers identified to date was for an amount under $10,000, and thus required only one verifier, in addition to the individual entering the wire, under Bank-1's policies, and was entered manually in Bank-1's systems.

b. Of the more than 200 unauthorized wire transfers, approximately 176, sent between in or about August 2008 and in or about June 2018 and totaling in excess of $1.38 million, were sent to accounts in the name of CC-1 at two large financial institutions (respectively, "Bank-2" and "Bank-3"). Based upon Bank-1's review of its own internal records, I am aware that CC-1 is not a client of Bank-1 and that Bank-1 does not, typically, have individual clients and, as such, would not have legitimate business reason for wire transfers to CC-1.

    i. Based on information provided by Bank-3 to Bank-1, I believe that the Bank-3 account that received these wire transfers belongs to CC-1, that the address associated with the Bank-3 account ("Address-1") is the address at which AZIM currently resides, and that a significant portion of the transferred funds appear to have been withdrawn as checks to cash or checks payable to AZIM's spouse, both of which were subsequently deposited in AZIM and her spouse's joint accounts at Bank-3 (the "Azim Joint Account").

    ii. Based on my review of publicly available property records, I am aware that CC-1 purchased a property in New York in or about July 2018; in connection with documents associated with that purchase, CC-1 listed Address-1 as CC-1's address prior to the purchase. Based on my review of publicly available property records, I believe that AZIM and her spouse purchased the residence at Address-1 in or about 2000.

c. Approximately 16 of the 200 unauthorized wire transfers, sent between in or about May 2017 and in or about October 2020 and totaling in excess of approximately $116,000 were sent to a recycled clothing company ("Company-1"), to a bank account held by Company-1 in Canada. Based upon my review of information available through a publicly accessible database of global market intelligence information, I believe that Company-1 is associated with the same address in Ontario, Canada as another company ("Company-2"). Based upon my review of documents produced by Bank-3, I am aware that Company-2 wired approximately $64,000 to the Azim Joint Account between in or about August 2016 and in or about January 2021.

d. Approximately eight of the 200 unauthorized wire transfers, sent between in or about May 2017 and in or about October 2017, and totaling in excess of approximately $47,000 were sent to another recycled clothing company ("Company-3"). Based upon records obtained from the Florida Department of

State, Division of Corporations, as well as records obtained from a large financial institution at which Company-3 holds an account, I am aware that CC-2 is an officer of Company-3 and a signatory to Company-3's bank account. Based upon my review of documents produced by Bank-3, I am aware that CC-2 wired approximately $8,000 to the Azim Joint Account between in or about March 2016 and in or about July 2016, and Company-3 wired approximately $9,000 to the Azim Joint Account between in or about May 2016 and in or about January 2017.

        e. Approximately 12 of the 200 unauthorized wire transfers, sent between in or about November 2018 and in or about September 2019, and totaling in excess of approximately $89,000 were sent to another recycled clothing company ("Company-4"), to a bank account held by Company-4 in Canada. Based upon my review of documents produced by Bank-3, I am aware that Company-4 wired approximately $49,000 to the Azim Joint Account between in or about March 2018 and in or about September 2019. Several of these wires were sent almost immediately after the unauthorized wire transfer was sent from Bank-1 to Company-4. For example, on or about February 12, 2019, a wire transfer was sent from Bank-1 to Company-4 in the amount of approximately $8,323.04; on or about the same day, Company-4 wired approximately $4,015 to the Azim Joint Account. Similarly, on or about May 31, 2019, a wire transfer was sent from Bank-1 to Company-4 in the amount of approximately $7,985.55; on or about the same day, Company-4 sent a wire in the amount of approximately $3,889 to the Azim Joint Account.

        f. Approximately nine of the 200 unauthorized wire transfers, sent between in or about April 2016 and in or about March 2017 and totaling in excess of approximately $67,000, were sent to an additional company ("Company-5"). Based upon Bank-1's review of its own internal records, I am aware that Company-5 is not a client of Bank-1 and that, as a result, Bank-1 would not have legitimate business reason for wire transfers to Company-5.

    16. Based upon my review of e-mail communications obtained in response to the issuance of a judicially authorized search warrant, I am aware of the following, in substance and in part:

        a. AZIM exchanged emails with CC-2 and another employee of Bank-1 ("Employee-1"), among others, regarding the scheme to defraud Bank-1 described above.

        b. For example, on or about August 26, 2019, AZIM entered a wire transfer sending approximately $7,725 to Company-4. Based on Bank-1 records, Employee-1 appears to have verified the wire transfer. On or about the next day, August 27, 2019, AZIM used her personal email account to contact an email that appears to be associated with Company-4 (the "Company-4 Email") writing, in substance and in part, "sir I didn't recvd [sic] the money 7,725.00 today. Pls check for me. Julie[.]" The Company-4 Email responded to AZIM's email, though the signature block indicated that the sender was, in fact, CC-2. AZIM and CC-2, utilizing the Company-4 Email, then exchanged multiple emails, including one in which AZIM, in substance and in part, send CC-2 wiring information for the Azim Joint Account. On or about August 29, 2019, the Company-4 Email sent AZIM an email, copying an email address that appears to be associated with Employee-1, writing, in substance in an in part, "7650 sent[.]" On or about the same day, Company-4 wired approximately $7,650 to the Azim Joint Account.

    WHEREFORE, deponent prays that an arrest warrant be issued for GANGADAI RAMPERSAUD AZIM, a/k/a "Julie Azim," the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

/s/ Anthony Martinez, by SDA with permission
_____
ANTHONY MARTINEZ
Special Agent
Federal Bureau of Investigation

Sworn to before me by reliable electronic means this
  7 th day of April, 2021

*[signature: Stewart D. Aaron]*
_____
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

11